# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| ST. GEORGE COAL CO., INC., a Montana Corporation, SUNSHINE PACIFIC CORP., a Wyoming Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>G3 OPERATING LLC, HALCÓN RESOURCES CORPORATION, HRC OPERATING LLC, and JOHN DOES 1 through X,<br><br>Defendants. | CV 13-106-GF-BMM<br><br>**ORDER ADOPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

United States Magistrate Judge Keith Strong entered Findings and Recommendations in this matter on December 4, 2015. (Doc. 67). Halcón, formerly known as G3 Operating, LLC, sought summary judgment on counts two, three, and eight. Plaintiffs submitted a cross-motion for summary judgment on counts two, three, and eight, and moved for summary judgment on counts one, four, and six. Judge Strong recommends that summary judgment be entered in favor of Halcón on counts two, three, and eight. Judge Strong recommends that Plaintiffs' motion for summary judgment be denied on counts one, four, and six.

1

Upon service of a magistrate judge's findings and recommendations, a party has 14 days to file written objections. 28 U.S.C. § 636(b)(1). Plaintiffs timely filed objections on December 18, 2014. Halcón responded to Plaintiffs' objections on January 15, 2015. Plaintiffs' objections require this Court to make a de novo determination of those portions of the Findings and Recommendations to which objections apply. 28 U.S.C. § 636(b)(1).

Plaintiffs argue that Judge Strong mistakenly determined that a contract existed between the parties that obligated Plaintiffs to pay a proportionate share of all the costs associated with the development of the Wheeler Ranch 9-16 well. (Doc. 68 at 11). Plaintiffs further argue that Judge Strong incorrectly determined that the Montana royalty statutes do not apply to Plaintiffs' "overriding royalty interests." Plaintiffs finally argue that Plaintiffs' motion for summary judgment for count four, conversion, should be granted.

**Standard**

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court will grant summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry

of summary judgment. Factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Anderson*, 477 U.S. at 247-48.

**Count 2: Declaratory Judgment**

Plaintiffs seek a declaratory judgment that Plaintiffs have no obligation to pay Halcón any amount greater than the proportionate share referenced in the Authorization for Expenditure (AFE). Plaintiffs argue, in the alternative, that Plaintiffs have no obligation to pay any amount after the "completion date" of the well.

Plaintiffs and Halcón executed two separate types of documents. Plaintiffs each signed an Election to Participate letter (ETP). The ETP signed by Plaintiff Sunshine Pacific Corporation states

> As set forth in the enclosed AFE, the estimated drilling and completion costs for this operation are $2,882,200. According to our drilling title opinion, you will have a 12.50% participation working interest in this well and associate expenses. Should you choose to participate in the captioned well, your proportionate share of the cost would be $322,119.

(Doc. 36-6 at 2). The AFE lists a cost of $322,119. The AFE further states, however, that "the above cost is an estimate. The actual cost may be greater or less." (Doc. 36-6 at 5; Doc. 67 at 5-6).

Plaintiffs contend that the amount listed in the AFE represents a sum certain, rather than an estimate. Plaintiffs argue that the parties agreed that Plaintiffs would pay only a proportionate share of the cost listed in the AFE. Plaintiffs contend that

the agreement required Halcón to obtain further approval for any additional expenditures beyond the amount listed in the AFE. Plaintiffs contend that the ETPs do not represent enforceable agreements. Plaintiffs instead argue that the AFE represents the contract.

Plaintiffs offer no explanation for why the AFE declares that the amount represented "an estimate. The actual cost may be greater or less." (Doc. 36-6 at 5; Doc. 67 at 5-6). Plaintiffs argue only that they negotiated the specific dollar figure within the AFE. Plaintiffs argue that this negotiation establishes that the amount in the AFE represents a sum certain rather than an estimate.

Plaintiffs argue in the alternative that they authorized expenditures only up to the estimated amount. Plaintiffs contend that any additional expenditures required a supplemental authorization for expenditure. Plaintiffs point to no language in either the AFE or the ETPs that would support Plaintiffs' argument.

Judge Strong looked at both the ETPs and the AFE. Judge Strong determined that the terms of the ETPs created a contract. Judge Strong noted that the agreements did not cap Plaintiffs' liability at the amount listed in the AFE. The Court agrees. Both the ETPs and the AFE reflect that the dollar amount represented an estimate rather than a sum certain. Plaintiffs contracted to pay their proportionate costs of the well.

Plaintiffs argue in the alternative that even if they were obligated to pay their proportionate cost of developing the well, that obligation ended on the "completion date" of the well. The ETPs state that "the estimated drilling and completion costs for this operation are $2,881,200." (Doc. 36-6 at 2). Plaintiffs argue that the phrase "completion costs" terminates Plaintiffs' obligation to pay for well expenses on the "completion date." The "completion date" represents a technical term that refers to the date referenced in a Completion Report filed with the Montana Board of Oil and Gas Conservation for regulatory purposes. The AFE and the ETPs nowhere define "completion costs."

Judge Strong noted that completion costs could include costs related to completing a well for production, plugging the well, and abandoning a well. Montana law provides that well owners, such as Plaintiffs, remain liable for properly plugging a dry or abandoned well. This liability does not end on the "completion date." *See* Mont. Code Ann. § 82-11-123. Plaintiffs remain liable for their proportionate share of the costs associated with the Wheeler Ranch 9-16 well even after the "completion date."

Halcón's motion for summary judgment on count two is granted. Plaintiffs' cross-motion for summary judgment on count two is denied.

**Count 3 & Count 8**

Plaintiffs argue in count three that Halcón failed to pay royalties in violation of Montana Code Annotated section 82-10-103. Plaintiffs argue in count eight that Halcón failed to provide accounting and payment of royalties, in violation of Montana Code Annotated section 82-10-101. Plaintiffs possessed an overriding royalty interest on several other wells. Halcón "netted" money from the overriding royalty interest that it otherwise would have paid to Plaintiffs. Halcón used this "netted" money to cover Plaintiffs' debt on the Wheeler Ranch 9-16 well.

Judge Strong determined that Montana Code Annotated section 82-10-101 and section 82-10-103 do not apply to Plaintiffs' overriding royalty interest. Judge Strong noted that these statutes apply to owners of a "royalty interest." These statutes do not refer explicitly to overriding royalty interests. Judge Strong referenced other Montana statutes that do refer explicitly to overriding royalty interests. Judge Strong notes that when a court interprets a statute, the court should not insert terms which have been omitted, or omit terms which have been included. Mont. Code Ann. § 1-2-101.

The Court agrees with Judge Strong that the omission in Montana Code Annotated section 82-10-101 and section 82-10-103 of owners of an overriding royalty interest indicates that these statutes do not apply to owners of an overriding royalty interest. By contrast, the reference in Montana Code Annotated section 15-

36-310 to both an overriding royalty interest and a royalty interest reflects the distinction between a royalty interest and an overriding royalty interest. *See also* § 70-9-802(10)(b) and § 77-3-444, MCA.

Plaintiffs point to the text of Montana Code Annotated section 82-10-101 in support of Plaintiffs' argument that these statutes apply to owners of an overriding royalty interest. The statutory text provides:

> Whenever an owner of a royalty interest in or attaching to lands producing natural gas, oil, or other minerals **or** in or to the natural gas, oil, or other mineral production from said lands . . . (emphasis added).

Plaintiffs argue that the emphasized "or" demonstrates that the statute applies to landowner royalties and to other types of royalties, such as overriding royalties. Plaintiffs ignore, however, the fact that the statute specifically applies to "an owner of a royalty interest." Similarly, Montana Code Annotated section 82-10-103 provides a cause of action with the right to attorney fees for "a royalty owner," not the owner of an overriding royalty interest.

This Court must read the statute as written and must not insert terms which have been omitted. Mont. Code Ann. § 1-2-101. These statutes apply to owners of a royalty interest and not to owners of an overriding royalty interest. These statutes offer no relief to Plaintiffs. Halcón's motion for summary judgment on counts three and eight is granted. Plaintiffs' cross-motion for summary judgment on counts three and eight is denied.

## Plaintiffs' Motion for Summary Judgment

Plaintiffs have filed a motion for summary judgment on counts one, four, and six. Judge Strong recommends that Plaintiffs' motion for summary judgment be denied. Plaintiffs argue that their claim for conversion, count four, should be granted. Plaintiffs have not contested Judge Strong's recommendation that Plaintiffs' motion for summary judgment on counts one and six be denied.

## Count 4: Conversion

Plaintiffs claim in count four that Halcón committed conversion by "netting" Plaintiffs' overriding royalty interest from other wells and applying that overriding royalty interest money to Plaintiffs' debt on the Wheeler Ranch 9-16 well. Plaintiffs contend that no contract or right entitled Halcón to offset Plaintiffs' obligation to pay for the Wheeler Ranch 9-16 well against Plaintiffs' overriding royalty interest for other wells.

Halcón points to evidence that Plaintiffs consented to Halcón's "netting" of the overriding royalty interest. Plaintiff St. George Coal sent an email to Halcón in January 2013. A principal for Plaintiff St. George Coal acknowledged in the email that "I also know St George Coal owes around 125k." The email further provided that "I hope St George Coal can continue to be netted for a few more months at which time I will make sure that their bills are caught up." Finally, the email recognized that "I know Sunshine plans to pay their outstanding balance next

week." (Doc. 72 at 30 n.3; Doc. 40 at 10). Halcón further contends that Plaintiff Sunshine Pacific issued a check to Halcón. Halcón suggests that Plaintiff Sunshine Pacific paid the amount that it owed after having subtracted the money that Halcón had "netted" from their overriding royalty interest. (Doc. 72 at 30 n.3).

Halcón has presented evidence that Plaintiffs consented to the "netting." This evidence undermines Plaintiffs' claim that the "netting" resulted in conversion of Plaintiffs' property. This evidence creates a genuine issue of material fact that would preclude summary judgment under these circumstances. *Anderson*, 477 U.S. at 250. Plaintiffs' motion for summary judgment on count four is denied.

**Counts 1 & 6**

Plaintiffs contend in count one that Halcón committed breach of contract because the costs of the Wheeler Ranch 9-16 well substantially exceeded the estimated costs. The Court has determined that the parties' contract included a cost estimate rather than a sum certain. Halcón argues that the increased costs were due, in part, to severe weather and accompanying runoff. Plaintiffs have failed to demonstrate that no genuine issues of material fact exist with relation to count one. Plaintiffs' motion for summary judgment on count one is denied.

Plaintiffs allege in count six that Halcón committed breach of the implied covenant of good faith and fair dealing by failing to pay Plaintiffs their overriding

9

royalty interests from the other wells. Halcón has submitted evidence, however, that Plaintiffs consented to the "netting." Summary judgment would be inappropriate under these circumstances. Plaintiffs' motion for summary judgment on count six is denied.

**IT IS HEREBY ORDERED:**

1. Halcón's motion for summary judgment (Doc. 34) on counts 2, 3, and 8 is **GRANTED.**

2. Plaintiffs' cross-motion for summary judgment on counts 2, 3, and 8, and motion for summary judgment on counts 1, 4, and 6 (Doc. 37) is **DENIED**.

DATED this 2nd day of March, 2015.

_____
Brian Morris
United States District Court Judge